ODOM *et al. v.* WALKER.

(In Banc.   Jan. 25, 1943.)

[11 So. (2d) 452.   No. 35151.]

**Welch & Cooper,** of Laurel, for appellants.

Leonard B. Melvin, of Laurel, for appellee.

Argued orally by **Ellis B. Cooper**, for appellants, and by **Leonard B. Melvin**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Walker, appellee, obtained a judgment against Odom and Tillery, appellants, for personal injuries caused by a fall which resulted, so Walker alleged, from his compliance with an urgent order of appellants, as masters, to him, as their servant, directing him into a dangerous and unsafe place to work, while he was engaged as a carpenter in the employ of appellants in the construction of a dwelling house.

Appellants first say that Walker is precluded from recovery because he knew of the dangerous condition of the place into which he was ordered to go. The dangerous condition consisted in this: A two by four plank sixteen feet long rested flatwise and loose upon nails partly driven into a sill of the house some six to eight feet from the ground. The edge of the plank was against and outside the sill and was being used as a measure or yardstick by another servant for the purpose of marking upon the sill the places where the upright studding would rest thereon. The workman would slide the plank forward as his work progressed. Walker stepped upon this loose plank, and he and the plank fell to the ground. He testified that the plank had the appearance of being permanent and substantial, and that he did not know of the hidden danger and could not have ascertained the fact, except by getting down from the building onto the ground and examining underneath the plank; that the order was given by Mr. Odom, who was personally present superin-

tending the construction of the house, and that it was an urgent order to relieve and help a fellow worker who was holding up a section of the studding attempting to nail a top piece thereon; and that he had no time or opportunity to examine or investigate the condition of the place into which he was ordered. Walker is amply supported by other testimony. There is no direct proof that Walker knew of the dangerous condition.

Comparative knowledge of the dangerous condition of the place of work, if there is a conflict in the testimony, is a question for the jury. 35 Am. Juris., p. 558, Sec. 128.

In addition to this, the appellants—defendants—submitted to the jury on the trial of the case, under an instruction that they obtained, the question of comparative negligence as between plaintiff and defendants in the lower court. There is ample evidence to support the finding of the jury on that question.

The appellants next say that Walker cannot recover, because the conditions were continuously changing in the course of the construction of the building, and that, in such cases, the master is not under duty to furnish a safe place to work. Gulf, M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503; City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283; Craig v. Craig et al., 192 Miss. 271, 5 So. (2d) 673. This action, in its last analyses, is not based upon an unsafe place to work, but upon obedience by the servant to an urgent order given by the master directing him to go immediately into a dangerous place, known to the master but unknown to the servant to be dangerous. The rule of changing conditions during construction has no application to this case. In 35 Am. Juris., p. 698, Sec. 273, this rule is announced: ''Ordinarily, an employee has a right to assume he may safely act under the direction or command of his employer or of the foreman or other superior employee under whom he is working. Accordingly, in determining the issue as to responsibility for the employee's injury, much importance attaches to

the fact that the employer or his representative gave a command, order, or direction to the employee to do the act which resulted in injury to the latter. Where this fact is shown, the issue as to responsibility or negligence is held, ordinarily, to be properly submitted to the jury. It is a fundamental of the relation of master and servant that the servant shall yield obedience to the master; and this obedience an employee properly may accord even on being confronted with perils that otherwise should be avoided. In any case, but more plainly where a command is sudden and there is little or no time for reflection and deliberation, the employee may not set up his judgment against that of his recognized superiors; on the contrary, he may rely upon their advice, assurances, and commands, notwithstanding many misgivings of his own.'' See also, C. & R. Lumber Co. v. Crane, 135 Miss. 303, 99 So. 753. This case is further distinguished from those cited above by appellants, in that Odom was personally present on the job directing the activities of the employees, and the proof is entirely sufficient to show that he had actual knowledge of the dangerous condition, which danger, in the absence of knowledge thereof, was a hidden danger.

The appellants next contend that the proof fails to show that Odom ordered Walker into this place of danger. They say Walker himself selected the place. Odom denied that he gave any order at all. Other witnesses say that he did, and the jury found that he did. The jury also found that Odom directed Walker into this particular place. We cannot say from this record that he did not do so. A model of the house was used before jury when the witnesses were testifying. The witnesses illustrated by this model. The record is full of such expressions as that Odom told Walker to ''get over there'' (indicating) or ''over here'' (indicating). There is nothing in the record to show where these places were; but Walker testified that he got into the place where Odom told him

to get, and that place was upon the loose plank which caused him to fall to the ground and which produced his injury. We cannot say that Odom did not direct Walker to get into this particular place.

Whether Walker could have selected the way to go to the assistance of his fellow worker was a question for the jury. He, and other witnesses, said that the command was urgent and that he had no time to investigate, that this plank had the appearance of being a permanent and substantial part of the building, and that he went the way directed by Odom. That also was a question for the jury. C. & R. Lumber Co. v. Crane, supra.

Appellants further contend that they cannot be liable unless the proof shows that they had actual knowledge of the dangerous condition. They complain because the lower court refused to grant them instructions to that effect. We might say that the testimony is entirely sufficient to show that they did have actual knowledge, but the law seems to be settled in such cases that constructive knowledge is the equivalent of actual knowledge. See Gulf, M. & N. R. Co. v. Brown, supra; Craig v. Craig et al., supra; Kneale v. Lopez & Dukate, 93 Miss. 201, 46 So. 715; Hope v. Natchez, C. & M. R. Co., 98 Miss. 822, 54 So. 369; Mississippi Cent. R. Co. v. Bennett, 111 Miss. 163, 71 So. 310; Davidson v. Riley, 5 Cir., 17 F. (2d) 345; Randolph Lumber Co. v. Minchew, 172 Miss. 535, 159 So. 849; 35 Am. Juris., Sec. 559, p. 129. The lower court did not err in overruling the request of appellants for a directed verdict.

The appellants also complain of other designated instructions granted the plaintiff and refused the defendants below. We have considered them and think no error was commited in that respect, especially in view of the instructions granted appellants.

But the case must be reversed and remanded for a new trial because of the proceeding now to be related: The trial started Thursday afternoon about three o'clock,

and at the time of the adjournment that day plaintiff had examined all the jurors except one. The court instructed the eleven jurors who had been examined that they might separate but not to talk to any one, or permit any one to talk to them, about the case being tried. On Friday morning, after the plaintiff had accepted the twelve jurors and while counsel for defendants was interrogating them as to whether any one had talked with them about the case, one juror, in the presence of the other eleven accepted jurors, as well as in the presence of prospective jurors, said that before he was called into the box as a juror "We was down here in the court room and some man, I don't know who it was, but he said a man was being tried that had his neck broke, that he was. trying the contractor and the insurance company for $20,000;" that he was not acquainted with this man, and the man was not trying to talk to the jurors. Thereupon. counsel for the defendants moved the court to discharge that panel and set the trial for a later day in the term, so that a jury might be obtained who had not heard these remarks, which motion the court overruled and then proceeded with the trial of the case. The injury for which Walker sued consisted in the fracture of one and the dislocation of another vertebrae in his neck, and during the trial he was wearing around his neck a high collar made of stiff leather and steel, which prevented his moving his head and causing fresh injury to these places. His suit was for $20,000. This court has consistently held that evidence or statements before the jurors informing them, correctly or incorrectly, that defendant is insured against liability for which the suit is brought, is error. Herrin v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605; Robertshaw Trustees et al. v. Columbus & G. Ry. Co., 185 Miss. 717, 188 So. 308. In Standridge v. Martin, 203 Ala. 486, 84 So. 266, 267, the court said: "There can scarcely be made to a jury a more seductive and insidious suggestion than that a verdict for damages against the

defendant before them will be visited, not upon that defendant, but upon some invisible corporation whose business it is to stand for and pay such damages. Such a suggestion, once lodged in the minds of the jury, is almost certain to stick in their consciousness, and to have its effect upon their verdict, regardless of any theoretical exclusion of it by the trial judge. In such cases the obvious, and indeed the only, remedy is to set aside the verdict and order another trial.''

It is true that in some of these cases the extent of the error has been determined by the wrongful conduct in disclosing this information to the jury, and that no such question is here involved. Nevertheless, the idea was implanted in the minds of the jurors at the beginning of the trial that these defendants, who were local people, were insured against liability and a judgment against them would cost them nothing. Defendants had no way to offset this idea—whether they did, or did not, in fact have such insurance. We must apply rules, aided by common sense, to the practical administration of the law. We think this idea could not but influence and have weight with the jury. The great aim of the courts is justice; they are created, organized, and conducted to administer justice as perfectly as human beings are capable of so doing; they more nearly approximate that aim, as the judge and the jurors are fair and impartial, without bias, interest or prejudice—seeking only to accomplish that purpose.

The court should have sustained the motion, and for this error we must reverse the case for a new trial.

Reversed and remanded.

**Smith, C. J.**, delivered a dissenting opinion.

I agree with my associates that ''we must apply rules, aided by common sense, to the practical administration of the law,'' which if acted on here should lead to an affirmance of this judgment, and this I think should be done.