Eugene J. LUSSAN, Appellant,

v.

GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellee.

No. 18234.

United States Court of Appeals
Fifth Circuit.

June 17, 1960.

John B. Hattier, New Orleans, La., for appellant.

492

John P. Hammond, New Orleans, La., Montgomery, Barnett, Brown & Read, New Orleans, La., of counsel, for appellee.

Before RIVES, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This case presents the question whether an action which a human being would normally take may be considered by a jury to be that which the law's ordinary prudent person would have taken under such circumstances.

■ What brings this all about was a wasp—or a bee—it really doesn't matter for bees and wasps are both of the order hymenoptera, and while a wasp, unlike the bee, is predacious in habit, both sting human beings, or humans fear they will. The wasp did not intrude upon a pastoral scene or disturb the tranquillity of nature's order. What this wasp did—perhaps innocently while wafted by convection or the force of unnatural currents generated by the ceaseless motion of man's nearby machines—was to find itself an unwelcome passenger in an automobile then moving toward, of all places, Elysian Fields—not on the banks of Oceanus, but a major thoroughfare in the City of New Orleans on the Mississippi.

With the wasp was the defendant—owner and driver of the vehicle. Two others were with him in the front seat as his mobile guests. The wasp flew in —or his presence was suddenly discovered. Like thousands of others confronted with the imminent fear of a sting by such air-borne agents, the defendant driver swatted at the wasp. Whether he hit the wasp, no one knows. But momentarily the defendant driver apparently thought this menace had flown his coupe. The wasp, however, was not yet through. One of the passengers suddenly looked down and hollered out "watch out, it's still alive." Instinctively the defendant driver looked down at the floorboard and simultaneously made a sweeping swat at the wasp or where the wasp was thought to be. The wasp with all his capacity for harm scarcely could have thought itself so powerful. For without ever stinging anyone, or perhaps for that matter even being there at all, this anonymous bug brought substantial damage to one of the guests. Unconscious probably that it had set in motion the law's but-for chain reaction of causation, the wasp was the blame in fact. For when the driver by involuntary reflex took the swat, he lurched just enough to pull the steering wheel over to crash the moving car into a vehicle parked at the curb.

The traditional twelve good men performing their function in the jury system by which men drawn from all walks of life pass upon behavior of their fellow men, heard these uncontradicted facts. Instructed by the judge in a clear fashion on the law of due care in a charge to which no exception was taken, the jury in nine minutes returned a verdict for the driver. The plaintiff, appellant here, injured substantially by this combination of natural, human and mechanical forces has a single aim, and hope and necessity: convincing us that the trial court erred in not granting the plaintiff's motions for instructed verdict and *j.n.o.v.*

■ His surprise or even disappointment in this adverse verdict actually returned in favor of a direct-action insurer-defendant is not sufficient to give to this incident the quality essential to a directed verdict. Variously stated, restated, repeated and reiterated, the legal standard to be met is that no reasonable man could infer that the prudent man would have acted this way. Marsh v. Illinois Central R., 5 Cir., 1949, 175 F.2d 498; Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914. In the determination of this, little instruction comes from prior cases involving a Connecticut bee in Rindge v. Holbrook, 111 Conn. 72, 149 A. 231, or a diversity Eighth Circuit Iowa wasp, Heerman v. Burke, 8 Cir., 1959, 266 F.2d 935.

Asserting this negative imperative—no reasonable man could hold as the jury did—inescapably puts the reviewing

judge, trial or appellate, in the position of a silent witness in behalf of mankind. In assaying the scope of the specific record, we inevitably measure it in terms of the general experience of mankind including our own. Charles Alan Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751 (1957). We draw on what we and what all others constituting that composite reasonable man have come to know. The sources of this knowledge are as variable as are the subjects of inquiry.

In this simple case in the search for the negative limits of the inferences open to the so-called reasonable man, we deal with a situation known and experienced by all—the involuntary reflex responses by which nature protects life from harm or apprehended harm. In a philosophical way it may be that nature has here elevated the instinct of *self-preservation* to a plane above the duty to refrain from harming others. It is here where man through law and ordered society steps in. But in stepping in, man, through law, has erected as the standard of performance, not what had to be done to avoid damage, but that which prudent human beings would have done or not done.

At times the judgment of the common man—voiced through the jury or other trier of fact—on what the prudent man should have done will be to deny to the individual concerned a legal justification for his perfectly human instinctive response. At other times what is actually usual may be equated with that which is legally prudent.

■ That is what occurred here. A wasp became the object of apprehended harm. Protective responses were instinctive and natural and swift. True, this diverted driver and his attention from other harm and other duties. But the jury in these circumstances under unchallenged instruction on legal standards concluded that this was normal and prudent human conduct. What better way is there to judge of this?

Affirmed.