Richard G. SYMANOWICZ, Petitioner,

v.

ARMY AND AIR FORCE EXCHANGE SERVICE, and Employers Insurance of Wausau, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 81–1075.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1982.

Decided March 16, 1982.

Rehearing and Rehearing En Banc Denied June 28, 1982.

Kensel R. Minshall, Cleveland, Ohio, Marianne Smith, U. S. Dept. of Labor, Washington, D. C., for petitioner.

Sidney Ravkind, Mendell & Wright, Houston, Tex., for respondent.

Before PELL, Circuit Judge, MARKEY,* Chief Judge, and SPRECHER, Circuit Judge.

MARKEY, Chief Judge.

Petition from an order of the Benefits Review Board (Board) denying coverage under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA, 33 U.S.C. § 901 et seq. (1976)), as extended by the Non-Appropriated Fund Instrumentalities Act, 5 U.S.C. § 8171 (1976). We affirm.

* Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

## Background

Richard Symanowicz was involved in an automobile accident in the early morning of December 16, 1970, while enroute from Misawa to Tokyo, Japan. Misawa is approximately 750 kilometers north of Tokyo.

Kei Motor Company (Kei) was a Japanese company engaged in the automobile repair business, having locations in Misawa and in Fuchu, near Tokyo. During 1970 Kei operated facilities at several United States Air Force bases, including those in Misawa and Fuchu, under contract from the Japanese Regional Exchange, a part of the Army and Air Force Exchange Service (Exchange). By early December, 1970, however, Kei had terminated operations at those bases, continuing its operation at Yokota Air Force Base.

Symanowicz, an American citizen, was an employee and director of Kei and husband of Kei's president. He supervised company operations in Misawa and Tokyo, spending approximately half of each month in each city.

On December 15, 1970, Masao Kamioka, manager of the auto parts department at Fuchu Air Force Base and an Exchange employee, telephoned Kimie Kurumada, manager of Kei, Fuchu. Kamioka inquired whether Symanowicz was in Misawa and, if so, whether he could drive to Tokyo by noon on December 16, 1970, with four snow tires.

When Ms. Kurumada contacted Symanowicz in Misawa, the latter advised that there was no contract with Fuchu Air Force Base, that he was not authorized to enter Misawa Air Force Base, and that he already had plane reservations to Tokyo. Ms. Kurumada relayed the information to Mr. Kamioka, who said, "Don't worry about it, we'll take care of everything."

Mr. Kamioka then arranged for the delivery of the snow tires from Misawa Air Force Base to Kei, Misawa. The tires ar-
rived in the afternoon of December 15, 1970, and were loaded into a car owned and furnished by Kei. Symanowicz called Kei, Fuchu to advise that he would be driving back, and began the trip that evening. Shortly after midnight, he suffered severe injuries in a collision with a truck stopped on the highway.

Symanowicz was taken to a Japanese hospital, where he remained until January 8, 1971. On or about January 12, 1971, he requested treatment at the United States military hospital at Misawa. The following morning, he was notified by the Base Exchange Manager's Office that he was cleared for treatment as an employee. On January 15, 1971, Symanowicz was admitted to the hospital at Misawa, examined by a neurosurgeon, and asked to return in three days. When he returned, he was advised that he would need surgery at the Tachikawa Air Force Base hospital. Symanowicz was denied admission to Tachikawa, however, because he was not an Exchange employee.

Symanowicz filed a workers' compensation claim against the Exchange on February 5, 1975, asserting that he was an Exchange employee at the time of the accident. The Administrative Law Judge (ALJ) considered: (1) ten factors in Restatement of Agency 2d § 220 relating to servant v. independent contractor status; (2) nine factors in *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir. 1977), relating to "borrowed employee" status; and (3) four factors in *Gordon v. Commissioned Officers' Mess, Open*, 8 BRBS 441 (1978), relating to employee v. independent contractor status. The ALJ concluded that Symanowicz was neither an Exchange employee nor an independent contractor, but was a volunteer assisting the Exchange in furtherance of his own or his employer's interest. Accordingly, on March 20, 1979, the ALJ denied coverage.[1]

---

1. The ALJ found that "*if* any relationship existed between claimant and the Exchange other than a simple business accommodation or favor by claimant, it was one of independent contractor status [Emphasis added]." Because we hold *infra* that substantial evidence supports the finding that Symanowicz was a volunteer, we agree with the ALJ that he was neither an Exchange employee nor an independent contractor.

In affirming the ALJ's decision on November 28, 1980, the Board approved application of the *Gaudet* test, saying:

> The administrative law judge in this case applied *Gaudet* . . . The *Gaudet* test is one of the tests that we find acceptable when applied pursuant to an extensive review of the facts in relation to the requirements of that test. *See also Gordon v. Commissioned Officers' Mess, Open* . . . .
>
> *Gaudet* noted that nine factors are to be weighed "as appropriate in each particular case," and that no single factor or combination of factors is decisive, and that no fixed test is used to determine whether a borrowed employee relationship exists. *Gaudet* at 355. Thus, it is up to the administrative law judge to evaluate the relative weight of each point and to decide if, taken together, the facts indicate that such a relationship exists.

A dissenting Board member argued that *Gaudet* emphasizes an employer's right to control the employee as determinative of an employer-employee relationship, while *Oilfield Safety and Machine Specialties, Inc. v. Harman Unlimited, Inc.*, 625 F.2d 1248 (5th Cir. 1980), decided after the ALJ's decision, held that the proper test for an employer-employee relationship in workmen's compensation cases is the "relative nature of the work" test. Accordingly, the dissent would have remanded to the ALJ for further proceedings, focusing on the nature of Symanowicz's trip in relation to the regular business of the Exchange.

### Issue

Whether an employer-employee relationship existed between the Exchange and Symanowicz at the time of the accident.

### Opinion

■ Symanowicz argues that the Exchange, having initially accepted responsibility for his medical treatment, is estopped from denying his employee status. Though we are referred to no legal authority as basis for applying an estoppel theory, we shall assume, without deciding, that under some circumstances estoppel may apply. *Cf. Dicks v. Cleaver*, 433 F.2d 248 (5th Cir. 1970) (Automobile negligence suit, wherein the central issue was whether plaintiffs were employees of defendant at the time of the accident. Case remanded for the admission of additional testimony to resolve the question whether plaintiffs were estopped from denying employee status). On the present facts, however, estoppel does not apply. The Exchange merely granted Symanowicz's request to be admitted as an employee to the hospital at Misawa on January 15, 1971. He was there X-rayed, examined by a neurosurgeon, and asked to return in three days. The Exchange made no promises, that it would provide surgery at Government expense or otherwise. The Exchange made a final decision that Symanowicz did not qualify for benefits as an Exchange employee. It has consistently adhered to that position. The legal issue is whether Symanowicz was an employee of the Exchange at the time of the accident. The subsequent action of the Exchange, in initially admitting him to the hospital, did not affect the determination of that issue, particularly where, as here, it is not established that Symanowicz relied to his detriment on any action of the Exchange subsequent to the accident. We therefore find no error in the Board's treatment of this argument.

■ Symanowicz's argument that he was a "borrowed employee," working for the Exchange at the time of the accident, lacks support in the statute and case law. Under 5 U.S.C. § 8171(a), the LHWCA extends to "an employee of a nonappropriated fund

In *Kei Jidosha Hanbai K.K.*, 73–1 BCA § 9982 (1973), Kei argued that Symanowicz was "at the time of the accident, acting as either an employee or agent of the Exchange because delivery of tires was not called for in the contracts between [Kei] and the Exchange and, hence, [Symanowicz], by agreeing to the Exchange's request, entered into an independent contractual relationship with the Exchange." The Board of Contract Appeals disagreed, finding that Kei "clearly rendered the service requested by the Exchange as a matter of personal and business accommodation . . . and as a voluntary favor."

instrumentality described by [5 U.S.C. § 2105(c)] who is ... a United States citizen ... employed outside the continental United States." Under 5 U.S.C. § 8171(b), "the term 'employer' in [the LHWCA] includes the nonappropriated fund instrumentalities described by [5 U.S.C. § 2105(c)]." Section 2105(c) contains no definition of "employee," but refers to employees *paid* from nonappropriated funds of the instrumentalities named therein, including the Exchange. Therefore, to qualify as an Exchange employee entitled to workers compensation, a statutory prerequisite is that an individual be paid or have an agreement to be paid from nonappropriated funds of the Exchange.

■ As stated in 1C Larson, *The Law of Workmen's Compensation* § 47.41 (1980), "By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their services [Footnotes omitted]." For example, in *Kubik v. Farmers Union Oil Co.*, 209 N.W.2d 551 (S.D.1973), plaintiff, a customer at defendant's place of business, was asked by defendant's employee to deliver a propane tank to a neighbor on his way home. Plaintiff, who was not on defendant's payroll and was at defendant's place of business only to make a purchase, agreed and attempted to load the tank alone, injuring his foot. The court held that plaintiff was a "gratuitous employee," not eligible for workmen's compensation. *Id.* at 553.

One type of gratuitous worker is "the volunteer who assists another person with a view in part to furthering either his own or his own employer's interest ... There is almost no limit to the variety of kinds of self-interest that may appear in this class of cases." Larson, *supra*, § 47.41(c). For example, in *Freedman v. Wolfswinkel*, 19 Ariz.App. 307, 506 P.2d 1092 (1973), plaintiff's deceased had recently passed the real estate salesman's license examination and was acting as hostess for guests of the

defendant real estate developers at an outing on their premises. She received no monetary compensation, benefiting only by payment of her expenses and the experience attendant to the task. She was killed in the course of her activities. Although the developers sought to limit recovery to workmen's compensation, the court allowed a negligence action, ruling that plaintiff's deceased was not an employee for workmen's compensation purposes.

■ We agree with the Board that there is substantial evidence on the record as a whole to support these ALJ findings: (1) the Exchange requested Symanowicz to drive from Misawa to Fuchu, bringing with him four snow tires; (2) Symanowicz was an employee and director of Kei and husband of the company's president; (3) Kei had a business relationship with the Exchange, unrelated to the delivery of tires, and the request to Symanowicz was prompted by that relationship; (4) Symanowicz would have returned to Fuchu that evening anyway as part of his normal duties for Kei; (5) neither the Exchange nor Symanowicz was in the business of transporting tires; (6) the Exchange's statement "We'll take care of everything" is consistent with reimbursement of expenses plus a gratuity; and (7) Symanowicz received no payment for transporting the tires.

Accordingly, we agree that substantial evidence supports the ALJ's finding that "claimant was a gratuitous worker, a volunteer, who assisted another person, the Exchange, with a view in part to furthering either his own or his employer's interest, since he was a director and husband of the chief officer of a company which had other business relationships with the Exchange."

■ The ALJ's findings of fact may be reversed only if unsupported by substantial evidence. *Oilfield Safety*, 625 F.2d at 1254. In reviewing administrative findings, this court must not substitute its judgment for that of the agency, *id.*, and it is immaterial that the facts may permit the drawing of different inferences, or even that we may have reached a different conclusion on the

same facts. *Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d 797, 802–03 (7th Cir. 1977).

Symanowicz and the Director, Office of Workers' Compensation Programs, argue that the ALJ and Board majority erred as a matter of law in applying the restrictive, common-law "right to control" test to deny Symanowicz's status as an Exchange employee. They seek a remand to the Board for application of the more inclusive "relative nature of the work" test, arguing that that test best promotes the purposes and policies of the LHWCA and citing Larson, *supra*, § 43.00 et seq.; *Haynie v. Tideland Welding Service*, 631 F.2d 1242 (5th Cir. 1980); and *Oilfield Safety*, 625 F.2d at 1248. The argument lacks merit.

First, the ALJ did not simply apply a naked right-to-control test. He found Symanowicz to have been a "volunteer." Though the Board opinion discusses *Gaudet* and the right to control test, it affirmed the findings of the ALJ, the most critical of which is that Symanowicz was a volunteer.

■ Moreover, the workmen's compensation concept of "employee" is *narrower* than the common-law concept of "servant" in one important respect, namely, the employee receives or expects to receive pay for his services, whereas the servant may work without pay. Larson, *supra*, § 47.00 et seq. In view of our holding that Symanowicz was a mere volunteer, he cannot qualify as an "employee" for compensation purposes.

The *Oilfield* and *Haynie* cases are distinguishable. In *Oilfield*, 625 F.2d at 1248, Clarence Hansen was injured while making a safety inspection of an oil drilling platform in the Gulf of Mexico. Though Oilfield Safety, Inc. and Harman Unlimited, Inc. each denied liability, the ALJ and the board found that both were Hansen's employers at the time of the accident, making them jointly and severally liable for his workers' compensation benefits under the LHWCA.

The question in *Oilfield* was not whether Hansen was a paid employee entitled to compensation benefits, for that was undis-

puted, but rather whether Oilfield Safety or Harman Unlimited was Hansen's employer at the time of the injury. In resolving the question, the Fifth Circuit determined that the proper standard for deciding whether an individual is an employee is the "relative nature of the work" test, focusing on the nature of the individual's work in relation to the regular business of the employer. The court held that substantial evidence supported the administrative findings that the nature of Hansen's work in relation to the regular business of Oilfield Safety and Harman Unlimited made him an employee of both.

In *Haynie*, 631 F.2d at 1242, Fred Haynie was injured on an offshore oil rig and instituted suit against Tideland Welding Service (Tideland) under the LHWCA. Applying the "right to control" test, the ALJ found that Haynie was not an "employee" of Tideland and denied his claim for compensation. The board affirmed. Haynie appealed, contending that Tideland was his employer, bringing him within the coverage of the LHWCA.

Haynie was a paid worker, the sole issue being whether he was an "employee" of Tideland under LHWCA. The Fifth Circuit was unable to conclude that the administrative findings were supported by substantial evidence in light of the "relative nature of the work" test recently adopted in *Oilfield*. Because the court found the record on appeal inadequate to ascertain whether Haynie was a Tideland employee under the test, it remanded for further proceedings.

The present issue is not that involved in *Oilfield* or *Haynie*. If it were, it would then be necessary, of course, to decide whether the "relative nature of the work test" is appropriate for application. *Oilfield Safety*, 625 F.2d at 1254. Here, however, Symanowicz has been found, on substantial evidence, to have been a volunteer ineligible for coverage under the Acts on which his suit rested.

Accordingly, the order of the Board is affirmed.

Affirmed.